**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **CHEIKH YOUBA HEBOUD,** **Petitioner,** v. **TODD BLANCHE et al.,** **Respondents.** | **NO. 5:26-cv-03484-KS** **MEMORANDUM OPINION AND ORDER** |

Before the Court is the Petition for Writ of Habeas Corpus by a Person in Federal Custody ("Petition") filed by Petitioner Cheikh Youba Heboud ("Petitioner") on June 24, 2026. (Dkt. No. 1.) For the following reasons, the Petition is **GRANTED**.

## BACKGROUND

Petitioner is a citizen of Mauritania who was apprehended by United States Customs and Border Patrol ("CBP") shortly after entering the United States without inspection on November 4, 2024. (Dkt. No. 1 ¶ 27.) Because Petitioner did not manifest a fear of return to Mauritania, the United States Department of Homeland Security ("DHS") issued Petitioner a Form I-860 Notice and Order of Expedited Removal. (*Id.*) However, on December 5, 2024, DHS issued Petitioner a Notice to Appear ("NTA") for standard removal proceedings under 8 U.S.C. § 1229a. (*Id.* ¶ 28.) The NTA indicated that the expedited removal order had been

vacated because Petitioner had subsequently established a credible fear of return to his home country. (*Id.*) Petitioner was released from custody in January 2025. (*Id.*)

On July 24, 2025, Petitioner appeared at his scheduled master calendar hearing at the New York Immigration Court where here was taken into custody by Immigration and Customs Enforcement ("ICE") officers. (*Id.* ¶ 29.) ICE detained Petitioner at the Richwood Correctional Center in Monroe, Louisiana. (*Id.* ¶ 30.) On November 17, 2025, Petitioner presented applications for asylum, withholding of removal, and protection under the Convention Against Torture before an immigration judge ("IJ") in Jena, Louisiana. (*Id.*) At the conclusion of that hearing, the IJ denied Petitioner's applications for relief and ordered him removed to Mauritania. (*Id.*) Petitioner promptly appealed the removal order to the Board of Immigration Appeals ("BIA"), and that appeal remains pending. (*Id.*)

In March 2026, ICE transferred Petitioner to the Adelanto ICE Processing Center in Adelanto, California. (*Id.* ¶ 31.) On March 27, 2026, Petitioner appeared for a custody redetermination hearing at which the IJ concluded that "the government had 'met its burden by clear and convincing evidence that [Petitioner] does pose a flight risk such that no bond can be issued.'" (*Id.* ¶¶ 32-33 (quoting Dkt. No. 1-1 at 34).) The IJ based the flight-risk determination on the following grounds:

> (1) Petitioner is a "very recent arrival"; (2) the Form I-213 notes that he "did not express a fear of return back to" Mauritania; (3) he "ultimately had a full-blown hearing with a judge in which all forms of relief were denied"; (4) he had no family ties in the United States; and (5) although Petitioner stated he would, if released, reside with a friend in Louisiana, his asylum application listed a New York address.

(*Id.* (quoting Dkt. No. 1-1 at 29-34).)

On June 24, 2026, Petitioner, through counsel, filed the instant Petition (Dkt. No. 1), as well as several supporting exhibits, including a transcript of the bond hearing and the IJ's written bond decision (Dkt. No. 1-1). The Petition asserts that Petitioner is entitled to "release on the same conditions which Respondents had applied to him at the time of his initial release from ICE custody [] in January 2025" because his March 27, 2026 custody redetermination hearing "failed to comport with due process in several independent respects: the IJ did not hold the government to its burden and, instead, shifted the burden to Petitioner, her flight risk finding rests on legally impermissible and record-contradicted grounds, and on the outright denial of bond without any consideration of alternative conditions." (*Id.* ¶¶ 3-4.) The Petitioner further asserts that Petitioner's re-detention absent a material change in circumstances violated his procedural and substantive due process rights. (*Id.* ¶¶ 59-63.)

On July 1, 2026, Respondents filed an Answer in which they assert that "Petitioner received a legally adequate [] bond hearing where the burden was squarely on DHS by a standard of clear and convincing evidence, rendering his request for relief via immediate release or a new bond hearing moot." (Dkt. No. 7 at 2-3.) Respondents also contend that the Petition "should be denied for this Court's lack of jurisdiction to review Petitioner's custody determination and bond order under sections 1226(e) and 1252(a)(2)(B)(ii)." (*Id.* at 4.)

Petitioner filed a Reply on July 5, 2026 reiterating that the Court should grant the Petition and order Petitioner's release. (Dkt. No. 8.) Specifically, Petitioner avers that Respondents' "Answer does not cite—much less engage—the transcript of Petitioner's March 27, 2026 bond hearing, does not dispute a single factual allegation of the verified Petition, and does not respond at all to two of the Petition's four claims." (*Id.* at 1 (internal citations omitted).) Petitioner also argues that "[b]ecause Respondents have not challenged the Petition's factual allegations, have not addressed Counts III and IV, and have raised no exhaustion defense, those matters stand unrebutted, conceded, and waived, respectively." (*Id.* at 2.)

## LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); 28 U.S.C. § 2241(c)(3). "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." *Lopez-Marroquin v. Barr*, 955 F.3d 759 (9th Cir. 2020).

## DISCUSSION

### I. <u>Jurisdiction</u>

"[N]oncitizens who fall under § 1226(a) are not subject to mandatory detention." *Lopez v. Immigr. & Customs Enf't*, No. 2:26-cv-1072 DAD CSK, 2026 U.S. Dist. LEXIS 97967, at *7 (E.D. Cal. May 4, 2026) (citing 8 U.S.C. § 1226(a) (1)-(2), (c)). "Under § 1226(a), the government makes an initial custody determination, and the noncitizen will be released upon a showing 'to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding.'" *Id.* (quoting *Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022)). Additionally, § 1226(a) provides that "a detainee may request a bond hearing before an IJ at any time before a removal order becomes final" and that "[i]f at this hearing the detainee demonstrates by the preponderance of the evidence that he is not 'a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk,' the IJ will order his release." *Diaz*, 53 F.4th at 1197 (quoting *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)).

Although federal courts generally lack jurisdiction to review discretionary bond determinations, 8 U.S.C. § 1226(e) does not preclude judicial review of constitutional claims or questions of law. *Martinez v. Clark*, 124 F.4th 775, 781-82 (9th Cir. 2024); *see also Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011) ("§ 1226(e) does not strip a district court of its traditional habeas jurisdiction, bar constitutional challenges or preclude a district court from addressing a habeas petition challenging the statutory framework that permits the petitioner's detention without bail."). Because the determination of whether a noncitizen is dangerous or a risk of flight for immigration-detention purposes involves a mixed question of law and fact, it is therefore reviewable in habeas proceedings. *Martinez*, 124 F.4th at 779 (citing *Wilkinson v. Garland*, 601 U.S. 209 (2024)); *see also W.T.M. v. Bondi*, No. 2:25-cv-02428-RAJ-BAT, 2026 U.S. Dist. LEXIS 21315, at *4 (W.D. Wash. Jan. 30, 2026) (concluding that Section 1226(e) did not divest the district court of its subject-matter jurisdiction over the petitioner's claim because the petitioner was "challenging whether the IJ provided him with a bond hearing that comports with the constitutional due process protections to which he is entitled" rather than "challenging the IJ's discretionary judgment"). This Court, therefore, has jurisdiction to review Petitioner's claims concerning the constitutional sufficiency of Petitioner's bond hearing.

## II. Administrative Exhaustion

Once an immigration detainee receives a bond hearing before an IJ, the detainee may appeal the IJ's decision to the BIA. *Leonardo v. Crawford*, 646 F.3d 1157, 1159 (9th Cir. 2011). If the detainee disagrees with the BIA's decision, the detainee may challenge the detainee's continued detention by filing a habeas petition in the district court. *Id.* Thereafter, "the district court's decision on the habeas petition may be appealed" to the Ninth Circuit. *Id.*

Although 28 U.S.C. § 2241 "does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus," Ninth Circuit precedent may "require, as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies

before seeking relief under § 2241." *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). Specifically, Courts may require prudential exhaustion if: (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review. *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007).

If a petitioner does not exhaust administrative remedies, "a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies." *Leonardo*, 646 F.3d at 1160. However, even if the *Puga* factors weigh in favor of prudential exhaustion, courts may waive the exhaustion requirement when "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (citation omitted). "The party moving the court to waive prudential exhaustion requirements bears the burden of demonstrating that at least one of these *Laing* factors applies." *Chavez v. Noem*, 801 F. Supp. 3d 1133, 1139 (S.D. Cal. 2025).

Upon consideration of the *Puga* factors, the Court finds that prudential exhaustion is not required in this case. First, the BIA's expertise in immigration bond decisions is not necessary to decide the legal questions at issue here—whether Petitioner's bond hearing was constitutionally adequate. *See Soriano v. Hernandez*, No. 2:26-cv-00900-DGE, 2026 U.S. Dist. LEXIS 79044, at *9 (W.D. Wash. Apr. 10, 2026) (finding the first *Puga* factor weighed against requiring prudential exhaustion because the BIA's expertise was not needed to address the issue of "whether, as a matter of law, the undisputed evidence presented at the bond hearing could establish that Petitioner posed a flight risk"). Second, "waiver of the prudential exhaustion requirement will not 'encourage the deliberate bypass of the administrative

scheme,'" and "[a]ny risk of deliberate bypass of administrative procedures is further reduced by the fact that district courts will only have jurisdiction in the 'rare case[s]' where future plaintiffs allege a 'colorable' constitutional or legal challenge to the government's procedures." *Hernandez v. Sessions*, 872 F.3d 976, 989 (9th Cir. 2017) (quoting *Torres-Aguilar v. INS*, 246 F.3d 1267, 1271 (9th Cir. 2001)). Lastly, where the Petition presents constitutional due process concerns, "the Court finds no reason to delay review in favor of allowing the BIA to possibly correct an error." *Soriano*, 2026 U.S. Dist. LEXIS 79044, at *10. Therefore, Petitioner was not required to exhaust his administrative remedies before proceeding with his Petition in this Court.

## III. Bond Hearing and Decision

Having found that this Court has jurisdiction to review Petitioner's claims and that Petitioner need not exhaust his administrative remedies, the Court now turns to the question of whether Petitioner's bond hearing was legally and constitutionally sufficient.

### A. Legal Standard

In *Martinez*, the Ninth Circuit found that an immigration judge's determination that a noncitizen presents a danger by "clear and convincing" evidence is a "mixed question" amenable to review "for an abuse of discretion" by federal courts in habeas. *Martinez*, 124 F.4th 783-84. When reviewing a determination for abuse of discretion, a court may only determine whether the IJ applied the correct legal standard, not reweigh evidence. *Id.* at 785 ((citing *Wilkinson v. Garland*, 601 U.S. 209, 220 (2024)).

To determine whether a noncitizen is a danger to the community or a risk of flight, an IJ considers the factors set forth in *In re Guerra*:

> (1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen's] length of residence in the United States; (3) the [noncitizen's] family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen's] employment history; (5) the [noncitizen's] record of appearance in court; (6) the [noncitizen's] criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen's] history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise escape from authorities; and (9) the [noncitizen's] manner of entry to the United States.

24 I. & N. Dec. at 40. The IJ has "broad discretion" in deciding which factors to consider and weigh. *Id.*

"The Ninth Circuit has also explained, however, that an immigration judge 'abuses [her] discretion when [she] fails to consider and address in its entirety the evidence submitted by a petitioner and to issue a decision that fully explains the reasons for [the decision].'" *Arriola v. Blanche*, No. 5:26-cv-02957-MAR, 2026 U.S. Dist. LEXIS 154555, at *13 (C.D. Cal. June 22, 2026) (quoting *Franco-Rosendo v. Gonzales*, 454 F.3d 965, 966 (9th Cir. 2006)); *see also Sales v. Johnson*, 323 F. Supp. 3d 1131, 1141 (N.D. Cal. 2017) (ordering release of immigration detainee based on a finding that the government did not present sufficient evidence to show flight risk, especially in light of evidence favorable to the petitioner, to satisfy its burden at the bond hearing). "In the context of a flight-risk determination, factors unique to the detainee must be evaluated in determining whether the noncitizen is unlikely to appear for future immigration proceedings." *Arriola*, 2026 U.S. Dist. LEXIS 154555, at *14 (citing *In re Patel*, 15 I. & N. Dec. 666, 666-67 (BIA 1976)).

\\

**B. Analysis**

At the March 27, 2026 hearing, the IJ concluded that "that the government has met its burden by clear and convincing evidence that [Peititoner] does pose a flight risk such that no bond can be issued." (Dkt. No. 1-1 at 34.) Specifically, the IJ determined that Petitioner was a risk of flight because the Petitioner is a recent arrival; only later expressed a fear of return back to Mauritania despite not doing so upon his arrival at the border; was denied relief from removal; lacked family ties in the United States; and listed a New York address on his asylum application despite stating at the hearing that he would again reside with a friend in Louisiana. (*Id.* at 29-35.) The IJ then issued an order with a checked box for "Denied" and the rationale "because Flight Risk." (*Id.* at 37.)

Petitioner asserts that "although the government submitted three documents (the Form I-213, an FBI rap sheet, and the IJ's merits decision) and the IJ invoked the words 'clear and convincing evidence,' she did not require the government to carry its burden." (Dkt. No. 1 ¶ 47.) Petitioner also posits that "[n]o single ground the IJ cited, nor all five considered together, amounts to clear and convincing evidence that Petitioner is a flight risk." (*Id.* ¶ 49.) Furthermore, Petitioner argues that the IJ's "failure to consider less restrictive alternatives before imposing the most restrictive outcome is an independent violation of due process." (*Id.* ¶ 57.)

The clear and convincing standard, which Respondents concede DHS had to satisfy at the bond hearing, "requires the Government to present evidence to establish 'an abiding conviction that the truth of [the] factual contentions at issue is highly probable." *N.A. v. Warden, Adelanto Det. Facility*, No. 5:25-cv-03007-CV-MBK, 2026 U.S. Dist. LEXIS 54427, at *20-21 (C.D. Cal. Feb. 20, 2026) (quoting *Mondaca-Vega v. Lynch*, 808 F.3d 413, 422 (9th Cir. 2015) (en banc)). This "is a high burden and must be demonstrated in fact, not 'in theory.'"

*Obregon v. Sessions*, No. 17-cv-01463-WHO, 2017 U.S. Dist. LEXIS 60552, at *20 (N.D. Cal. Apr. 20, 2017) (quoting *United States v. Patriarca*, 948 F.2d 789, 792 (1st Cir. 1991)).

Here, the Court finds that "the evidence before the IJ was not legally sufficient to establish—with the abiding conviction required by the clear and convincing evidence standard, —that Petitioner was a poor bail risk or likely to abscond such that no amount of bond could guarantee his appearance." *Lu v. L.A. Field Dir.*, No. 5:26-CV-00575-JAK (SPx), 2026 U.S. Dist. LEXIS 114567, at *31 (C.D. Cal. Apr. 15, 2026) (internal citations and quotations omitted) (quoting *Mondaca-Vega*, 808 F.3d at 422 and *Guerra*, 24 I. & N. Dec. at 40). At the hearing, the government did not present any argument to meet its burden to show that the Petitioner is a flight risk. Instead, the only statements made by the government during the hearing were that it submitted Petitioner's Notice to Appear, FBI rap sheet, and removal order to the immigration court and that it wished to proceed with a bond hearing. (Dkt. No. 1-1 at 31.) The IJ then independently raised the issue of flight risk and proceeded to "ask[] Petitioner questions that appeared to conflict with favorable documentary evidence in the record, with no acknowledgement of or reference to that evidence." (*Id.* at 31-35.) *Arriola*, 2026 U.S. Dist. LEXIS 154555, at *16; *N.A. v. Warden, Adelanto Det. Facility*, No. 5:25-cv-03007-MBK, 2026 U.S. Dist. LEXIS 84888, at *27 (C.D. Cal. Apr. 15, 2026) ("Throughout the hearing and its decision, IJ similarly construed evidence (or the absence of evidence) against Petitioner even though DHS had presented no evidence or argument to support the IJ's interpretation."). It is therefore unclear how the IJ could find that the government met its burden when the government failed to argue at the hearing that Petitioner was a flight risk or present any evidence to that effect. *N.A.*, 2026 U.S. Dist. LEXIS 84888, at *23; *Sales*, 323 F. Supp. 3d at 1141; *Singh*, 638 F.3d at 1205.

"An IJ may choose to give greater weight to one factor over another in making his decision on whether [a noncitizen] would be a flight risk, as long as the decision is reasonable." *Sales*, 323 F. Supp. 3d at 1141. In this case, the IJ determined that Petitioner was a risk of

flight based on Petitioner's short time in and limited ties to the United States, Petitioner's delay in expressing a fear of returning to his home country, and the denial of Petitioner's applications for relief. (Dkt. No. 1-1 at 29-35.) But the record also shows that the government previously released Petitioner presumably based on a finding that he posed neither a danger nor risk of flight; that Petitioner successfully reported for his master calendar hearing only to be arrested and re-detained; that Petitioner had been living with a friend prior to his re-detention and would live with that same friend upon his release; and that Petitioner was pursuing an appeal of his removal order. (*See* Dkt. No. 1 ¶¶ 24-33.) "Under the *Guerra* factors, this uncontroverted evidence was probative as to whether Petitioner posed such a substantial risk of flight that no bond could guarantee his appearance at removal proceedings," and the record shows the IJ did not give it adequate consideration. *Lu*, 2026 U.S. Dist. LEXIS 114567, at *33. Moreover, "[t]he absence of any change in circumstances relative to the immigration authorities' prior determination [] that petitioner was not a flight risk demonstrates an abuse of discretion in implementing the clear and convincing evidence standard." *S.E. v. Noem*, No. 1:26-cv-00356-DAD-SCR, 2026 U.S. Dist. LEXIS 46065, at *10-11 (E.D. Cal. Mar. 5, 2026).

The IJ also erred in finding that Petitioner "does pose a flight risk such that no bond can be issued" (Dkt. No. 1-1 at 34) without "engag[ing] in any meaningful analysis of potential alternatives to detention, such as a GPS ankle monitor, home detention, enrollment in the Intensive Supervision Appearance Program ("ISAP"), or other reporting requirements as part of the flight risk calculus." *Felix v. United States DOJ*, No. 2:26-cv-03304-HDV-AYP, 2026 U.S. Dist. LEXIS 133657, at *3 (C.D. Cal. June 10, 2026). "A bond determination process that does not include consideration of financial circumstances and alternative release conditions is unlikely to result in a bond amount that is reasonably related to the government's legitimate interests." *Hernandez*, 872 F.3d at 991.

In sum, the Court finds that the IJ abused discretion in finding that Petitioner was a flight risk without clear and convincing evidence or argument on the issue from the government or

consideration of alternatives to detention. "Given the significant liberty interest at stake for noncitizens in immigration detention and the weak or nonexistent governmental interest in continued detention without adequate process, courts in this and other districts have found due process violations where IJs abuse discretion in bond determinations." *Gimenez v. Hernandez*, No. 2:26-cv-00966-GJL, 2026 U.S. Dist. LEXIS 94446, at *17 (W.D. Wash. Apr. 29, 2026) (collecting cases). Accordingly, the Court concludes that the IJ's bond determination did not accord with the requirements of due process and that Petitioner is entitled to habeas relief on his bond hearing claims.

## IV. Unlawful Re-Detention

Lastly, Petitioner argues that he is entitled to release because his "July 24, 2025 re-detention violated 8 U.S.C. § 1226(a), its implementing regulations, and the Due Process Clause." (Dkt. No. 1 ¶ 63.)

### A. Legal Standard

The Fifth Amendment Due Process Clause provides that no person shall be deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Due Process Clause applies to all 'persons' within the United States . . . whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* at 690.

Nonpunitive government detention violates the Due Process Clause unless the detention is ordered "in certain special and narrow . . . circumstances, where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Id.* (citations omitted). "In the context of civil immigration detention, the two 'regulatory goals'

of the Immigration and Nationality Act provisions governing such detention—'ensuring the appearance of [noncitizens] at future immigration proceedings' and 'preventing danger to the community'—can provide such 'special justification.'" *Zapata v. Kaiser*, 801 F. Supp. 3d 919, 939 (N.D. Cal. 2025) (quoting *Zadvydas*, 533 U.S. at 690).

"[I]it is well-settled that 'due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" *Hernandez*, 872 F.3d at 990 (quoting *Singh*, 638 F.3d at 1203). When determining what procedures are required by due process, courts weigh the three factors outlined in *Mathews v. Elridge*, 424 U.S. 319, 335 (1976)—(1) the private interest at stake; (2) the risk of erroneous deprivation; and (3) the government's interest.

With respect to the first *Mathews* factor, Petitioner gained a liberty interest in his continued freedom when he was released from detention in January 2025. *See Zapata*, 801 F. Supp. 3d at 934 ("Petitioners gained a liberty interest in their continued freedom when DHS elected to release them on their own recognizance under section 1226(a), which implied a promise that they would not be re-detained so long as they abided by the terms of their release."); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025) ("As ICE was not authorized to release [Petitioner] if she was a danger to the community or a flight risk, the Court must infer from [Peititoner's] release that ICE determined she was neither."); *Rodriguez Diaz*, 53 F.4th at 1207 (quoting *Singh*, 638 F.3d at 1208) ("We have also held, more generally, that an individual's private interest in 'freedom from prolonged detention' is 'unquestionably substantial.'").

Turning to the second *Mathews* factor, the risk of erroneous deprivation of liberty is high where, as here, Petitioner has been re-detained without being "provided any procedural safeguards to determine whether his detention is justified." *Singh*, 803 F. Supp. 3d at 1047.

Although Petitioner was previously released in January 2025 and was thus necessarily found to not be a flight risk or danger to the community, Petitioner was nevertheless re-detained without notice or a hearing. Therefore, the risk of erroneous deprivation is extraordinarily high as "ICE and DHS agency officials have sole, unguided, and unreviewable discretion to detain Petitioner despite [a prior] determination that his detention is not warranted, nor any process for Petitioner to challenge the exercise of that discretion." *Diaz*, 2026 U.S. Dist. LEXIS 29219, at *7; *see also Pinchi*, 792 F. Supp. 3d at 1035 ("Providing [Petitioner] with the procedural safeguard of a pre-detention hearing will have significant value in helping ensure that any future detention has a lawful basis."). Moreover, "[t]he availability of a [] bond hearing [] months after Petitioner was detained does not adequately address the risk that Petitioner was erroneously detained in the first place." *Banol v. Warden*, No. 5:26-cv-00529-CAS-ACCV, 2026 U.S. Dist. LEXIS 58440, at *15 (C.D. Cal. Mar. 19, 2026).

Finally, as to the third *Mathews* factor, "the government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez*, 872 F.3d at 994. Additionally, "[t]he effort and cost required to provide Petitioner with procedural safeguards is minimal and indeed was previously provided in his case." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025); *Qian Sun v. Santacruz*, No. 5:25-cv-02198-JLS-JC, 2025 U.S. Dist. LEXIS 165913, at *17-18 (C.D. Cal. Aug. 26, 2025) (finding that "any fiscal or administrative burden the additional procedural safeguard of a hearing before a neutral adjudicator imposes on the government" to be minimal).

"On balance, the *Mathews* factors show that petitioner is entitled to process, and that process should have been provided before petitioner was detained." *Singh*, 803 F. Supp. 3d at 1048. Additionally, "the government's failure to articulate an individualized interest in detaining Petitioner, including in these habeas proceedings, violates Petitioner's right to

substantive due process." *Rios v. Mattos*, No. 2:26-cv-01522-RFB-EJY, 2026 U.S. Dist. LEXIS 133356, at *9 (D. Nev. June 16, 2026). Accordingly, the Court concludes that Petitioner's re-detention was violated his due process rights and that Petitioner is therefore entitled to habeas relief on this claim.

## V. **Relief**

Having determined that Petitioner's re-detention and subsequent bond hearing violated due process, the Court must next determine the appropriate remedy. "In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief." *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013); *Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005) ("Federal courts have a fair amount of flexibility in fashioning specific habeas relief."); *see also Perera v. Jennings*, 598 F. Supp. 3d 736, 742 (N.D. Cal. 2022) ("Declaratory and injunctive relief are proper habeas remedies.").

"Upon determining that an IJ provided a petitioner with a legally or constitutionally inadequate bond hearing, district courts have either ordered petitioner's immediate release [] or ordered that Respondents provide petitioner with a new constitutionally adequate bond hearing." *Velasquez v. Bondi*, No. 26-cv-01759-GPC-DDL, 2026 U.S. Dist. LEXIS 85165, at *18 (S.D. Cal. Apr. 16, 2026) (citations omitted). But where the Court has also determined that the "petitioner was re-detained without notice or a pre-deprivation hearing in violation of due process, the detention is unlawful from its inception and typically requires immediate release." *Victoriano v. Mullin*, No. 2:26-cv-00886-RAJ, 2026 U.S. Dist. LEXIS 96596, at *22 (W.D. Wash. May 1, 2026) (quotation omitted); *see also Kirykovich v. Hernandez*, No. 2:26-cv-00695-JNW, 2026 U.S. Dist. LEXIS 71703, at *11 (W.D. Wash. Apr. 1, 2026) ("Because the constitutional violation is the absence of pre-deprivation process, the proper remedy is to restore the status quo ante—that is, to return [Petitioner] to the conditions that existed before his unlawful detention."). Therefore, the appropriate remedy here is Petitioner's release.

# ORDER

For the foregoing reasons, the Petition is **GRANTED**. **IT IS ORDERED** that Respondents shall immediately release Petitioner Cheikh Youba Heboud (A-Number 221-348-196) from custody. Respondents shall file a notice within three (3) days of this Order confirming Petitioner's release. **IT IS FURTHER ORDERED** that Respondents are enjoined from re-detaining Petitioner without notice and a meaningful opportunity to be heard before an immigration judge to determine whether detention is appropriate.[1] Judgment will be entered accordingly.

DATED: August 24, 2026

Karen L. Stevenson

HON. KAREN L. STEVENSON
CHIEF U.S. MAGISTRATE JUDGE

[1] Petitioner also requests an award of costs and attorney fees. (Dkt. No. 1 at 32-33.) Any request for costs and fees must be filed separately and in accordance with the deadlines set by the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.